**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

THOMAS SAXTON et al.,

        Plaintiffs,

vs.

THE FEDERAL HOUSING FINANCE
AGENCY et al.,

        Defendants.

No. 15-CV-47-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

     A.    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     B.    *Placement Into Conservatorship* . . . . . . . . . . . . . . . . . . . . . . . . . **4**
     C.    *Preferred Stock Purchase Agreements* . . . . . . . . . . . . . . . . . . . . . **4**
     D.    *Post-Conservatorship Financial Performance* . . . . . . . . . . . . . . . . **6**
     E.    *Third Amendment to PSPAs* . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
     F.    *Motivation for Third Amendment* . . . . . . . . . . . . . . . . . . . . . . . **7**

IV.   LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

V.    ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

     A.    *Nature of Plaintiffs' Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
     B.    *Issue Preclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
     C.    *§ 4617(f) Bar to Suit* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**16**
          1.   *Conservator's power to adopt Third Amendment* . . . . . . . . . . **18**
          2.   *Adoption of Third Amendment at Treasury's direction* . . . . . **19**
          3.   *Application of § 4617(f) to Treasury* . . . . . . . . . . . . . . . . . **21**
     D.    *§ 4617(b)(2)(A) Bar to Suit* . . . . . . . . . . . . . . . . . . . . . . . . . **23**

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

# I. INTRODUCTION

The matters before the court are Defendants Federal Housing Finance Agency ("FHFA") and Melvin L. Watt's "Motion to Dismiss" ("FHFA Motion") (docket no. 76) and Defendant United States Department of the Treasury's ("Treasury") "Motion to Dismiss the Amended Complaint" ("Treasury Motion") (docket no. 77) (collectively, "Motions").

# II. RELEVANT PROCEDURAL HISTORY

On February 9, 2016, Plaintiffs Thomas Saxton, Ida Saxton and Bradley Paynter (collectively, "Plaintiffs") filed an Amended Complaint (docket no. 61). In the Amended Complaint, Plaintiffs seek declaratory and injunctive relief and damages based on five claims against FHFA and Treasury: (1) actions taken by FHFA exceeded its statutory authority; (2) actions taken by Treasury exceeded its statutory authority; (3) actions taken by Treasury were arbitrary and capricious; (4) breach of contract by FHFA; and (5) breach of the implied covenant of good faith and fair dealing by FHFA. *See* Amended Complaint ¶¶ 134-81. Counts I-III are raised under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, and Counts IV-V are raised under state common law. Plaintiffs' claims arise from FHFA's exercise of its role as conservator of the Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") and Treasury's exercise of its authority to purchase Fannie Mae and Freddie Mac securities.

On March 18, 2016, FHFA and Watts filed the FHFA Motion and Treasury filed the Treasury Motion. On April 4, 2016, the proceedings in the instant case were stayed pending decision by the Judicial Panel on Multidistrict Litigation as to whether the case would be transferred with several similar cases for consolidation and coordination in another district. *See* April 4, 2016 Order (docket no. 79). On June 2, 2016, the Judicial Panel on Multidistrict Litigation denied transfer. *See* docket no. 80. On June 16, 2016,

FHFA and Watts filed a "Supplemental Brief in Further Support of Their Motion to Dismiss" ("FHFA Supplemental Brief") (docket no. 83). On June 30, 2016, Plaintiffs filed a Response (docket no. 86) to the FHFA and Treasury Motions. On August 1, 2016, FHFA and Watt filed a Reply (docket no. 87) to the Response. That same date, Treasury also filed a Reply (docket no. 88) to the Response. On March 23, 2017, the court heard oral argument from the parties regarding the issues raised in the Motions and the Response. *See* Mar. 23, 2017 Minute Entry (docket no. 104). The matters are fully submitted and ready for decision.

## III. FACTUAL BACKGROUND

Accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, the facts are as follows.

### A. Parties

Fannie Mae and Freddie Mac (collectively, "GSEs") are government-sponsored enterprises that purchase and guarantee mortgages issued by private banks and bundle the mortgages into securities that are then sold to investors. Amended Complaint ¶ 34. The GSEs issue common stock and various series of preferred stock, such that owners of preferred stock receive dividend and liquidation preferences over owners of common stock. *Id.* ¶ 36.

Plaintiffs Thomas and Ida Saxton are individuals residing in Cedar Rapids, Iowa. *Id.* ¶ 29. Thomas Saxton owns shares of Freddie Mac preferred stock, and Thomas and Ida Saxton own shares of Freddie Mac common stock both jointly and individually. *Id.* ¶ 37. The Saxtons acquired their Freddie Mac common stock in 2008. *Id.* Plaintiff Bradley Paynter is an individual residing in the State of Washington. *Id.* ¶ 30. Paynter owns shares of Fannie Mae common stock, which he acquired in 1996. *Id.* ¶ 38.

FHFA is an independent agency created by the Housing and Economic Recovery Act of 2008 ("HERA") and is empowered by HERA to regulate the GSEs. *Id.* ¶¶ 31, 42;

*see also* 12 U.S.C. § 4511.  Treasury is an executive agency temporarily authorized by HERA to purchase stock issued by the GSEs, with such purchase authority expiring on December 31, 2009.  Amended Complaint ¶¶ 53, 55; *see also* 12 U.S.C. § 1719(g).

### B.  Placement Into Conservatorship

In 2008, in the midst of the financial crisis, Congress passed HERA.  Amended Complaint ¶ 42.  In addition to creating FHFA, HERA also authorizes FHFA to place the GSEs under conservatorship or receivership.  *Id.*; *see also* 12 U.S.C. § 4617(a).  At the time of HERA's passing, the GSEs had "recorded losses in 2007 and the first two quarters of 2008," consistent with the dramatic downward trend of the housing market.  Amended Complaint ¶ 40.  Despite the losses, the GSEs remained capable of paying their debts and retained significant capital to pay future loses.  *Id.*

On September 6, 2008, FHFA placed the GSEs under conservatorship after receiving "significant pressure from Treasury" to do so.  *Id.* ¶ 48.  Upon announcing the conservatorship, FHFA made public statements to the effect that the conservatorship was temporary in nature and meant only to restore the GSEs to solvency, that GSE common stock would "continue to trade" and that shareholders would retain their rights to the financial value of their stock.  *Id.* ¶¶ 49-50.

### C.  Preferred Stock Purchase Agreements

On September 7, 2008, FHFA (as conservator of the GSEs) and Treasury entered into the Preferred Stock Purchase Agreements ("PSPAs").  *Id.* ¶ 52.  The PSPAs represented the vehicle through which Treasury exercised its authority under HERA to purchase securities issued by the GSEs.  *Id.* ¶ 53.  The PSPAs saw Treasury commit up to $100 billion to each of the GSEs, allowing the GSEs to draw upon the funding commitment to cover any difference between their assets and their liabilities in a given financial quarter and retain a positive net worth.  *Id.* ¶ 56.  In exchange for the funding commitment, Treasury received one million shares of "Government Stock" in each of the

GSEs, warrants to purchase 79.9% of each GSE's common stock and a quarterly "commitment fee" meant to compensate Treasury for its ongoing financial support. *Id.* ¶ 57, 63.[1] Treasury's Government Stock included a $1 billion liquidation preference, which would increase dollar-for-dollar for every draw that the GSEs made on Treasury's funding commitment. *Id.* ¶ 58.

Under the PSPAs, Treasury was also entitled to dividends calculated at a percentage of Treasury's liquidation preference. *Id.* ¶ 59. If the GSEs were unable to issue such dividends in cash, the PSPAs contemplated an alternative "in-kind" system wherein the calculated dividend value would be added to Treasury's liquidation preference. *See id.* This alternative dividend system ensured that the GSEs would not have to draw on Treasury's funding commitment merely to pay cash dividends—a scenario that would increase future dividend payments to Treasury (by further drawing on the funding commitment and increasing the liquidation preference) just to satisfy existing dividend payments to Treasury. *See id.* ¶ 62. The PSPAs required the GSEs to satisfy their dividend obligations to Treasury before paying dividends to the holders of any junior stock. *Id.* ¶ 65.

The PSPAs provided that, once the GSEs "pay down" Treasury's liquidation preference in its entirety, the Government Stock acquired by Treasury under the PSPAs would be redeemed. *Id.* ¶ 64.

In 2009, FHFA and Treasury amended the PSPAs on two separate occasions. *Id.* ¶¶ 67-68. On May 6, 2009, in the first amendment, Treasury increased its funding commitment to each of the GSEs from $100 billion to $200 billion. *Id.* ¶ 67. On December 24, 2009, in the second amendment, Treasury increased its funding commitment

---

[1] As a practical matter, the commitment fee has been consistently waived by Treasury, such that the GSEs have thus far never been obligated to pay the fee. Amended Complaint ¶ 63.

via a formula that would determine the precise amount of the commitment on a yearly basis in 2010, 2011, 2012 and in light of any surplus existing at the end of 2012. *Id.* ¶ 68. Regardless of the precise dollar amount calculated under the formula, the second amendment provided that the funding commitment would not fall below $200 billion. *Id.*

### D. Post-Conservatorship Financial Performance

Upon assuming its role as conservator of the GSEs in 2008, FHFA took a pessimistic view of the GSEs' financial prospects. *Id.* ¶ 70. Due to FHFA anticipating significant losses for the GSEs, the GSEs reported large "non-cash losses" triggered by write-downs of tax assets and the creation of loan loss reserves. *Id.* During the first year and a half of conservatorship, these reported non-cash losses were significantly greater than the GSEs' actual credit-related losses. *Id.* The GSEs' peers in the mortgage market were far less cautious than the GSEs in their reporting of non-cash losses. *Id.* ¶ 73. In part because of the GSEs' cautious accounting during conservatorship, the GSEs have drawn a collective $187 billion from Treasury's funding commitment since the conservatorship began and the PSPAs were issued, including $26 billion drawn to cover dividend payments to Treasury. *Id.* ¶ 74.

Despite the significant non-cash losses, the GSEs have regularly reported annual revenue in excess of their annual operating expenses during the conservatorship—with the only exception occurring in 2010. *Id.* ¶ 75. Consistent with the GSEs' improving financial outlook, Fannie Mae has not drawn on Treasury's funding commitment since the fourth quarter of 2011 and Freddie Mac has not drawn on Treasury's funding commitment since the first quarter of 2012. *Id.* ¶ 76. Such periods correlate with improvements in the overall housing market after the low point of the financial crisis. *Id.* ¶ 77.

Due to this period of strong financial performance during the conservatorship, by mid-2012 the GSEs anticipated reversing their loan loss reserves and the write-down of their tax assets, which would result in a significant increase in profitability. *Id.* ¶¶ 79-81,

86.  The GSEs also anticipated additional profits in the form of settlements relating to various lawsuits.  *Id.* ¶ 88.  Treasury and FHFA were aware that such increases in profitability were imminent.  *Id.* ¶¶ 83-84, 86-88.

### E.  Third Amendment to PSPAs

On August 17, 2012, FHFA and Treasury amended the PSPAs for a third time ("the Third Amendment").  *Id.* ¶ 89.  The Third Amendment restructured the GSEs' payment of dividends to Treasury.  *See id.* ¶ 96.  Rather than paying dividends in the amount of a percentage of Treasury's liquidation preference, as required under the original PSPAs, the Third Amendment requires the GSEs to pay quarterly dividends in the amount of their existing net worth—a dividend structure referred to as the "Net Worth Sweep."  *Id.*  The Third Amendment also formally eliminated the PSPAs' periodic commitment fee requirement.  *Id.* ¶ 100.

Since the Third Amendment went into effect, the GSEs have continued to demonstrate the profitability that they had shown beginning in late-2011 and early-2012.  *Id.* ¶ 102.  Due to the GSEs' continued profitability and the Third Amendment's restructuring of dividend payments to require quarterly payment of the GSEs' net worth, the GSEs have paid dividends to Treasury in far greater amounts than they would have paid prior to the Third Amendment.  *See id.* ¶¶ 106-07.

### F.  Motivation for Third Amendment

Due to the Third Amendment's timing (on the heels of the GSEs' improved financial performance) and various statements from Treasury officials, Plaintiffs view the Third Amendment as a means to prevent the GSEs from achieving the ability to pay down Treasury's liquidation preference and to exit conservatorship.  *See id.* ¶¶ 90-95.  As such, for as long as the Third Amendment remains in effect, Plaintiffs allege that the GSEs have been "effectively nationalized," rendering their private equity valueless.  *Id.* ¶ 93.  Plaintiffs further allege that the Third Amendment requires the GSEs to operate in a

precarious financial position, wherein they are unable to maintain capital reserves to weather any potential losses because of their obligation to surrender the entirety of their net worth to Treasury as dividends each quarter. *Id.* ¶ 108.

Plaintiffs allege that the Third Amendment was the result of Treasury's exercise of improper influence over FHFA, and that Treasury intended to keep the GSEs under government control and to enrich the federal government with the GSEs' profits. *See, e.g., id.* ¶¶ 92-93, 107, 112-15, 126. Plaintiffs also allege that the Third Amendment is inconsistent with the goals of conservatorship and that agreement to the Third Amendment indicates FHFA's plan for a perpetual—rather than temporary—conservatorship. *See, e.g., id.* ¶¶ 95, 108-11, 116-17, 120-21, 123-25.

## IV. LEGAL STANDARD

Defendants seek dismissal of the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* FHFA Motion at 1; Treasury Motion at 1.

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. (12)(b)(6). When analyzing a Rule 12(b)(6) motion, the court must accept all of the factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true . . . ."). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838-39 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard requires a complaint to "contain factual allegations sufficient 'to raise a right to

relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

Rule 12(b)(1) provides for dismissal of a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion can either attack the complaint's assertion of jurisdiction on its face or it can attack the factual basis underlying the court's jurisdiction. *See Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge like the one raised in the Motions, the factual allegations concerning jurisdiction are presumed to be true and a complaint will be dismissed only if the defendant shows that the plaintiff failed to allege some element necessary to invoke the court's jurisdiction. *See Branson Label*, 793 F.3d at 914. "Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

## V. ANALYSIS

In the Motions, Defendants seek dismissal of all claims alleged in the Amended Complaint. Plaintiffs consent to dismissal of Counts IV and V. *See* Response at 19 n.1. Accordingly, the court shall grant the Motions with respect to Counts IV and V.[2] The court shall proceed to address the Motions to the extent they argue for dismissal of Counts I-III of the Amended Complaint.

In the Motions, Defendants argue that the Amended Complaint should be dismissed

---

[2] Counts IV and V were the only claims in the Amended Complaint seeking money damages. *See* Amended Complaint ¶ 182(g). Counts I-III seek a declaratory judgment and injunctive relief only.

as to Counts I-III because: (1) the claims are barred by issue preclusion; (2) the claims are barred by HERA's anti-injunction provision, 12 U.S.C. § 4617(f); (3) the claims are barred by HERA's succession clause, 12 U.S.C. § 4617(b)(2)(A), pursuant to which FHFA, as conservator, assumed all shareholder rights; and (4) the claims are barred by a second anti-injunction provision, 12 U.S.C. § 4623(d). *See* "Memorandum in Support of FHFA Motion" ("FHFA Brief") (docket no. 76-1) at 14-15; "Memorandum in Support of Treasury Motion" ("Treasury Brief") (docket no. 77-1) at 17; "Supplemental Brief of Defendants FHFA and Melvin L. Watt in Further Support of the FHFA Motion" ("FHFA Supplemental Brief") (docket no. 83).

## A. *Nature of Plaintiffs' Claims*

As a preliminary matter, the parties dispute whether Plaintiffs' claims are direct claims brought on behalf of Plaintiffs individually, or whether they are derivative claims brought on behalf of the GSEs. *See, e.g.*, FHFA Brief at 23-26; Treasury Brief at 31-34; Response at 78-86. Because the nature of the claims may impact issue preclusion and the applicability of HERA's succession clause, the court shall begin by identifying whether the claims are direct or derivative.

A derivative claim is "asserted by a shareholder on the corporation's behalf against a third party . . . because of the corporation's failure to take some action against the third party." Derivative Action, *Black's Law Dictionary* (10th ed. 2014); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). A direct claim is asserted by a shareholder on the shareholder's own behalf "to enforce a shareholder's rights against a corporation." Direct Action, *Black's Law Dictionary* (10th ed. 2014). Because state law governs the organization of corporations, federal courts regularly look to state law to address corporate-law issues, like the distinction between direct and derivative claims, "unless the state law permits action prohibited by [federal law], or unless its application would be inconsistent with the federal policy underlying the cause of action." *Kamen*, 500

U.S. at 99 (alterations and internal quotation marks omitted) (quoting *Burks v. Lasker*, 441 U.S. 471, 479 (1979)); *cf. Guenther v. Griffin Constr. Co.*, 846 F.3d 979, 982-83 (8th Cir. 2017).

In the instant case, Plaintiffs urge the court to find that their claims are direct under federal law, pursuant to the APA, without resorting to state law. *See* Response at 79-80. The APA provides a cause of action to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Plaintiffs contend that they are "persons" suffering injury due to FHFA and Treasury's actions, such that their claims are implicitly direct under the standard articulated in the APA. *See* Response at 79. The court rejects Plaintiffs' argument. First, the APA does not purport to distinguish between direct and derivative claims. Second, the APA's reference to "person" in the judicial review provision does not implicitly limit its applicability to claims on behalf of individuals. *Cf. GoJet Airlines, LLC v. FAA*, 743 F.3d 1168 (8th Cir. 2014) (reviewing APA action brought by airline). Therefore, the court fails to see how mere access to judicial review under the APA has any bearing on whether Plaintiffs' claims are brought directly (as individuals) or derivatively (as the GSEs). *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1128 n.5 (10th Cir. 1999) (recognizing that the statutory basis for a claim against the government is a distinct issue from whether the claim is direct or derivative). Accordingly, the court will look to state law to determine whether the claims are direct or derivative.

The parties agree that Delaware law is the appropriate state law to consider. FHFA Brief at 24 n.8; Treasury Brief at 32, Response at 80-81. Under Delaware law, whether a shareholder's claim is direct or derivative "turn[s] *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation

or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). "In addition, to prove that a claim is direct, a plaintiff 'must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.'" *El Paso Pipeline GP Co., LLC v. Brinckerhoff*, __ A.3d __, __, No. 103, 2016, 2016 WL 7380418, at *10 (Del. Dec. 20, 2016) (quoting *Tooley*, 845 A.2d at 1039).

In the Amended Complaint, Plaintiffs allege that "FHFA has expropriated the [GSEs'] entire net worth for the benefit of the federal government, to the detriment of the [GSEs] and private shareholders such as Plaintiffs" (Count I); that Treasury "converted Treasury's Government Stock into new securities that nationalize the [GSEs] and entitle Treasury to 100% of their net worth . . . . destroy[ing] the value of the [GSEs'] private stock" (Count II); and that Treasury acted arbitrarily and capriciously, "which results in the Government's expropriation of all private shareholder value in the [GSEs'] preferred and common stock" (Count III). *See* Amended Complaint ¶¶ 137, 144, 148, 155. These and Plaintiffs' other articulations of alleged harm generally describe harm to the GSEs' stock value. Such harm is derivative in nature. *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) ("The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct under *Tooley*. In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large."). Even Plaintiffs' allegation as to expropriation of stock value does not support a direct claim, absent additional allegations that their voting rights have been diluted—allegations that do not appear in the Amended Complaint. *See El Paso Pipeline*, 2016 WL 7380418, at *13. Therefore, *Tooley*'s first prong supports a conclusion that Plaintiffs' claims are derivative.

In the Amended Complaint, Plaintiffs request the following relief: (1) a declaratory judgment that the Third Amendment violated HERA and that Treasury acted arbitrarily and

capriciously with respect to its role in the Third Amendment; (2) an injunction mandating a return to the GSEs of all dividends paid pursuant to the Third Amendment; (3) vacation of the Third Amendment's dividend scheme; (4) injunctions preventing FHFA or Treasury from taking action pursuant to the Third Amendment; and (5) an injunction preventing FHFA from acting at Treasury's behest. *See* Amended Complaint ¶ 182. Such relief would flow to the GSEs, insofar as it would return paid dividends to the GSEs and eliminate the Third Amendment, which implicates the GSEs and not Plaintiffs individually. Because the relief requested in the Amended Complaint does not "accrue directly to them," but instead accrues to the GSEs, the harm is derivative in nature. *See Perry Capital LLC v. Mnuchin*, __ F.3d __, __, No. 14-5243, 2017 WL 677589, at *25 (Feb. 21, 2017) ("*Perry Capital II*"). Therefore, *Tooley*'s second prong further supports a conclusion that Plaintiffs' claims are derivative.

Accordingly, the court finds that Plaintiffs' claims in the Amended Complaint are derivative in nature.

### B. Issue Preclusion

Defendants argue that Plaintiffs' claims are barred by the doctrine of issue preclusion. FHFA Brief at 22-28; Treasury Brief at 37-40. Defendants argue that Plaintiffs are bound by an order entered in the case of *Perry Capital LLC v. Lew* in the United States District Court for the District of Columbia. FHFA Brief at 22; Treasury Brief at 37; *see also Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208 (D.D.C. 2014) ("*Perry Capital I*"), *affirmed sub nom*, *Perry Capital II*, 2017 WL 677589. Specifically, Defendants argue that Plaintiffs and the *Perry Capital* plaintiffs both alleged derivative claims, making the GSEs the real party in interest in both cases and binding Plaintiffs to the court's determination in *Perry Capital*. *See* FHFA Brief at 23-26; Treasury Brief at 38. Plaintiffs argue that issue preclusion does not bar their claims because they were neither actual parties to the *Perry Capital* litigation, nor are they in privity with the parties

to that litigation. *See* Response at 90-93.

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). In the Eighth Circuit, issue preclusion has five elements:

> (1) the party sought to be precluded in the second suit was a party . . . in the prior suit; (2) the issue sought to be precluded is the same as the issue involved in the prior action; (3) the issue was "actually litigated" in the prior action; (4) the issue was determined by a valid and final judgment; and (5) the determination in the prior action was "essential to the judgment"

*Turner v. U.S. Dep't of Justice*, 815 F.3d 1108, 1111 (8th Cir. 2016) (alteration in original) (quoting *Morse v. Comm'r*, 419 F.3d 829, 834 (8th Cir. 2005)).

With respect to the first element, Plaintiffs were not named parties in the *Perry Capital* litigation. Because "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit," application of preclusion principles to nonparties is limited to six circumstances. *Taylor*, 553 U.S. at 892-95. One circumstance identified by the Supreme Court in *Taylor* is particularly relevant to the instant case: "'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who was a party' to the suit." *Id.* at 894 (alteration omitted) (quoting *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996)); *see also* 1 Restatement (Second) of Judgments § 41 (1982). "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the

14

nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Taylor*, 553 U.S. at 900 (internal citations omitted).

"Generally, . . . a judgment rendered in a shareholder-derivative lawsuit will preclude subsequent litigation by the corporation and its shareholders." *Cottrell v. Duke*, 737 F.3d 1238, 1243 (8th Cir. 2013); *see also Arduini v. Hart*, 774 F.3d 622, 634 (9th Cir. 2014) ("We . . . hold that shareholders bringing derivative suits are in privity for the purposes of issue preclusion . . . ."). However, as noted above, this general rule is "subject to the important proviso that the shareholder must fairly and adequately represent the corporation." *In re Sonus Networks, Inc., Shareholder Derivative Litig.*, 499 F.3d 47, 64 (1st Cir. 2007). Therefore, because the court has determined that Plaintiffs' claims are derivative, if the *Perry Capital* plaintiffs' claims were also derivative and fairly and adequately represented the GSEs, Plaintiffs shall be deemed the same party for purposes of issue preclusion.

*Perry Capital* involved "both a class action lawsuit and a set of three individual lawsuits," comprising a total of four complaints. *See Perry Capital I*, 70 F. Supp. 3d at 214. The class action complaint was explicitly derivative on behalf of the GSEs, *see id.* at 229, but it raised non-APA claims distinct from the APA claims alleged in Counts I-III of the Amended Complaint. *See Perry Capital II*, 2017 WL 677589, at *5 (describing the class plaintiffs' claims). Because the class-action derivative plaintiffs in *Perry Capital* did not pursue the same claims as Plaintiffs, the court finds that their interests were not sufficiently aligned. *Cf. Cont. W. Ins. Co. v. Fed. Housing Fin. Agency*, 83 F. Supp. 3d 828, 834 (S.D. Iowa 2015) (viewing the fact that prior plaintiffs raised the "same seven claims and [sought] essentially the same relief" as indicating that the interests of the prior and current plaintiffs were aligned). Therefore, the class-action derivative plaintiffs did not adequately represent Plaintiffs' interests.

The complaints in *Perry Capital*'s three individual lawsuits raised the same APA claims as Plaintiffs but did not purport to do so derivatively on behalf of the GSEs. *See Perry Capital II*, 2017 WL 677589, at *5. The district court explicitly declined to address whether such claims were brought directly or derivatively. *Perry Capital I*, 70 F. Supp. 3d at 229 n.24 ("The Court need not determine whether the individual plaintiffs' APA claims should be considered derivative, since all such claims are dismissed pursuant to § 4617(f)."). Thus, while the individual plaintiffs in *Perry Capital* may have had sufficiently aligned interests with respect to Plaintiffs' APA claims, they did not purport to act in a representative capacity on behalf of the GSEs and the district court declined to interpret the claims in any manner that would protect the GSEs' interests. *See Taylor*, 553 U.S. at 900. And even assuming that the individual plaintiffs' claims were in fact derivative, like Plaintiffs' claims, their failure to comply with the statutory requirements for bringing derivative claims afforded Plaintiffs no notice of their suit. *See* Fed. R. Civ. P. 23.1 (stating the requirements for bringing a derivative action). Therefore, the individual plaintiffs did not adequately represent Plaintiffs' interests.

In short, the class-action derivative plaintiffs in *Perry Capital* raised non-APA claims, thereby lacking sufficiently aligned interests, and the individual plaintiffs in *Perry Capital* neither acted in a representative capacity nor provided notice of their suit. As such, Plaintiffs cannot be deemed to have been a party to *Perry Capital* as required to satisfy the first element of issue preclusion. Accordingly, Plaintiffs suit is not barred by the doctrine of issue preclusion.

### C. § 4617(f) Bar to Suit

Defendants argue that Plaintiffs' claims are jurisdictionally barred by HERA's anti-injunction provision, § 4617(f), which provides in relevant part that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or a receiver." FHFA Brief at 28-41; Treasury Brief at 18-31. Plaintiffs

argue that § 4617(f) mounts no obstacle to their claims because the actions they complain of exceeded the scope of FHFA's power as conservator. Response at 28-57. Plaintiffs further argue that, even if § 4617(f) bars their claim against FHFA, it does not bar their claims against Treasury. *Id.* at 61-72.

Courts have interpreted § 4617(f) to have the same scope as a substantially similar anti-injunction provision in The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(j), which provides that "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [Federal Deposit Insurance Corporation ("FDIC")] as a conservator or a receiver." *See, e.g.*, *Cty. of Sonoma v. Fed. Housing Fin. Agency*, 710 F.3d 987, 992 (9th Cir. 2013) (citing FIRREA cases when analyzing § 4617(f) issue). To determine whether Plaintiffs' claims would "restrain or affect" the FHFA's powers as conservator, "the court must first determine whether the challenged action is within the [conservator's] power or function; if so, it then determines whether the action requested would indeed 'restrain or affect' those powers." *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1017 (8th Cir. 2013) (applying analysis to FIRREA receivership); *accord Perry Capital II*, 2017 WL 677589, at *8-10 (applying same analysis to HERA conservatorship). In considering the applicability of § 4617(f), the court bears in mind that the provision is "construed broadly to constrain the court's equitable powers." *Dittmer Props.*, 708 F.3d at 1016 (regarding § 1821(j)); *see also Hanson v. FDIC*, 113 F.3d 866, 871 (8th Cir. 1997) (recognizing that § 1821(j) "effects a sweeping ouster of courts' power to grant equitable remedies" and that the "drastic" nature of the provision's scope comports with congressional intent to broadly empower the FDIC to act in times of financial crisis (alteration omitted) (quoting *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995))).

### 1.    Conservator's power to adopt Third Amendment

In *Perry Capital II*, the D.C. Circuit held that FHFA's adoption of the Third Amendment fully comported with its statutory conservatorship powers and that, accordingly, the plaintiff-shareholder's APA claims would "restrain or affect" FHFA's exercise of such powers and were barred by § 4617(f). *Perry Capital II*, 2017 WL 677589, at *15. The court adopts *Perry Capital II*'s analysis in full. *Accord Roberts v. Fed. Housing Fin. Agency*, No. 16-C-02107, 2017 WL 1049841 (N.D. Ill. Mar. 20, 2017).

HERA empowers FHFA to fully assume operations of the GSEs, to exercise rights with respect to the GSEs' assets, to conduct all business of the GSEs, to collect money due to the GSEs and to preserve and conserve the GSEs' assets. *See* 12 U.S.C. § 4617(b)(2)(A)-(B); *see also Perry Capital II*, at *8. HERA further empowers FHFA to "take such action as may be . . . necessary to put the [GSEs] in a sound and solvent condition; and . . . appropriate to carry on the business of the [GSEs] and preserve and conserve the assets and property of the [GSEs]." 12 U.S.C. § 4617(b)(2)(D). FHFA is entitled to take any action pursuant to its statutory conservator powers that it "determines is in the best interests of the [GSEs] or [FHFA]." 12 U.S.C. § 4617(b)(2)(J)(ii).

Plaintiffs attack the wisdom of the Third Amendment and argue that it runs counter to the purposes of conservatorship. *See* Response at 34-35. Specifically, Plaintiffs suggest that FHFA's actions as conservator must achieve certain goals—namely, rehabilitation and a return to normal operations. *See id.* at 43-48. Plaintiffs' suggestion is contradicted by HERA's text. With respect to FHFA's power to operate the GSEs during conservatorship, HERA "outlines what FHFA as conservator 'may' do and what actions it 'may' take. The statute is thus framed in terms of expansive grants of permissive, discretionary authority for FHFA to exercise" in a manner that it "determines is in the best interests" of the GSEs or FHFA. *Perry Capital II*, 2017 WL 677589, at *9 (quoting 12 U.S.C. § 4617(b)(2)(J)).

As such, HERA "permits FHFA, but does not compel it in any judicially enforceable sense, to preserve and conserve [the GSEs'] assets and to return the [GSEs] to private operation." *Id.* at *9. Plaintiffs' outcome-oriented interpretation of HERA therefore misses the mark. HERA speaks to FHFA's powers as conservator, and such powers plainly allow for the actions contemplated by the Third Amendment. "Renegotiating dividend agreements, managing heavy debt and other financial obligations, and ensuring ongoing access to vital yet hard-to-come-by capital are quintessential conservatorship tasks designed to keep the [GSEs] operational." *Id.*; *see also Town of Babylon v. Fed. Housing Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012) (recognizing that "[d]irecting protective measures against perceived risks is squarely within FHFA's powers as conservator"). Whatever Plaintiffs' views of the wisdom of the Third Amendment, FHFA's adherence to its statutory role as conservator does not turn on the wisdom of its decision-making. *See Ward v. Resolution Trust Corp.*, 996 F.2d 99, 103 (5th Cir. 1993) (observing "the difference between the exercise of a function or power that is clearly outside the statutory authority of [an entity] on the one hand," which is subject to challenge, "and improperly . . . exercising a function or power that is clearly authorized by statute on the other," which is not subject to challenge). Any suggestion that FHFA could have or should have taken different actions to pursue the goals of conservatorship are therefore irrelevant. In light of the broad and permissive statutory powers afforded to FHFA as conservator, the court concludes that FHFA's adoption of the Third Amendment was within its powers as conservator.

### 2. *Adoption of Third Amendment at Treasury's direction*

Even though FHFA was empowered by HERA to exercise its powers as conservator to adopt the Third Amendment, Plaintiffs argue that FHFA nevertheless acted outside its authority under HERA by adopting the Third Amendment at Treasury's direction. Response at 35-38. According to Plaintiffs, FHFA's failure to exercise its own

independent judgment as to the Third Amendment violated § 4617(a)(7), which provides that FHFA "shall not be subject to the direction or supervision of any other agency." *Id.* at 35 (quoting § 4617(a)(7)). The D.C. Circuit did not address this allegation in *Perry Capital II* because the complaint in that case lacked sufficient factual detail. *See Perry Capital II*, 2017 WL 677589, at *11 n.9. Because the Amended Complaint includes factual allegations as to Treasury's direction of FHFA, *see* Amended Complaint ¶¶ 112-13, the court shall consider whether such allegations demonstrate that FHFA exceeded its statutory authority under HERA.

Defendants argue that Plaintiffs may not attack FHFA's compliance with § 4617(a)(7) because Plaintiffs do not fall within the statute's "zone of interests." *See* FHFA Brief at 37 n.18. "[T]he zone-of-interests analysis . . . asks whether 'this particular class of persons has a right to sue under this substantive statute.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, __ U.S. __, __, 134 S. Ct. 1377, 1387 (2014) (alteration omitted) (quoting *Assoc. of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675-76 (D.C. Cir. 2013)). "[T]he zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . , but by reference to the particular provision of law upon which the plaintiff relies." *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997).

Plaintiffs contend that they fall within the zone of interests of § 4617(a)(7) because the provision aims to protect the integrity of FHFA's operations as conservator and FHFA, acting as conservator, owes a duty to GSE shareholders like Plaintiffs. *See* Response at 37. The court agrees that § 4617(a)(7) aims to protect the integrity of FHFA's operations as conservator against outside influences. However, the provision invites no interpretation that shareholders like Plaintiffs fall within its zone of interests. Indeed, HERA as a whole "refers only to the best interests of FHFA and the [GSEs]—and *not* those of the [GSEs'] shareholders . . . ." *See Perry Capital II*, 2017 WL 677589, at *9. The court agrees with other courts addressing the issue that the purpose of § 4617(a)(7) "is to provide a

preemption defense *for FHFA* in its role as conservator." *Robinson v. Fed. Housing Fin. Agency*, No. 7:15-CV-109-KKC, 2016 WL 4726555, at *6 (E.D. Ky. Sept. 9, 2016); *see also Fed. Housing Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044, 1059-60 (N.D. Ill. 2013) (relying on § 4617(a)(7) to conclude that HERA preempts municipalities from regulating FHFA). In other words, § 4617(a)(7) specifically functions to remove obstacles to FHFA's exercise of conservator powers—*i.e.* to preserve FHFA's interests, not those of GSE shareholders. Appropriately viewed through this lens, the court concludes that Plaintiffs are not within the zone of interests created by § 4617(a)(7). Therefore, Plaintiffs allegations regarding Treasury's purported direction of and influence over FHFA cannot rescue their challenges to the Third Amendment.

Accordingly, because FHFA's adoption of the Third Amendment fell within its statutory authority as conservator of the GSEs, and because Plaintiffs seek to eliminate the Third Amendment—thereby restraining or affecting FHFA's action as conservator—Plaintiffs' claim against FHFA is barred by HERA's anti-injunction provision, § 4617(f).

### 3. Application of § 4617(f) to Treasury

Even though § 4617(f) bars Plaintiffs' claim against FHFA, Plaintiffs argue that their claims against Treasury are not barred. *See* Response at 61-72. Because Treasury is not identified in the text of § 4617(f), Plaintiffs argue that interpreting the provision to bar claims against Treasury "would empower FHFA to use contracts to immunize third parties . . . from their own, independent legal obligations." *Id.* at 61. Plaintiffs' arguments do not pass muster.

In holding that § 4617(f) applies to Treasury, the D.C. Circuit observed that "the effect of any injunction or declaratory judgment aimed at Treasury's adoption of the Third Amendment would have just as direct and immediate an effect as if the injunction operated directly on FHFA." *Perry Capital II*, 2017 WL 677589, at *16. In the context of

FIRREA's anti-injunction provision, the Eighth Circuit has likewise recognized that such provision bars claims against a third party where the "relief requested . . . affects the FDIC's ability to function as receiver" or conservator. *Dittmer Props.*, 708 F.3d at 1017 (further recognizing the "substantial chilling effect" that such claims would have on the FDIC's performance of its statutory powers); *see also Hindes v. FDIC*, 137 F.3d 148, 161 (3d Cir. 1998) (holding that FIRREA's anti-injunction provision "precludes a court order against a third party which would affect the FDIC as receiver, particularly where the relief would have the same practical result as an order directed against the FDIC in that capacity"). This analysis applies with equal force to the instant case.

It is true that some courts have contemplated cases wherein "an order against a third party would be of little consequence" to a conservator's functions, such that an anti-injunction provision like § 4617(f) may not apply. *Hindes*, 137 F.3d at 161; *see also Stommel v. LNV Corp.*, No. 2:13-CV-821-DAK, 2014 WL 1340676, at *5 (D. Utah Apr. 4, 2014) (declining to apply FIRREA's anti-injunction provision where the challenges to the third party action "do not seek to undo or alter any action by the FDIC"); *LNV Corp. v. Outsource Serv. Mgmt., LLC*, Civ. No. 13-1926 (JNE/LIB), 2014 WL 834977, at * 4 (D. Minn. Mar. 4, 2014) (declining to apply FIRREA's anti-injunction provision where the requested relief "would not 'restrain or affect' the FDIC [as receiver] in any way"). Here, however, Plaintiffs' "claims against Treasury are integrally and inextricably interwoven with FHFA's conduct as conservator." *Perry Capital II*, 2017 WL 677589, at *17. As such, the relief requested in Plaintiffs' claims against Treasury would undoubtedly "restrain or affect" FHFA's functions as conservator. Accordingly, Plaintiffs' claims against Treasury are barred by § 4617(f).

Because each of Plaintiffs' claims are jurisdictionally barred by HERA's anti-injunction provision, § 4617(f), the court shall grant the Motions on that ground. Nevertheless, the court shall proceed to consider an additional ground for dismissal raised

by Defendants.

### D. § 4617(b)(2)(A) Bar to Suit

Defendants argue that HERA's succession clause, § 4617(b)(2)(A), further bars Plaintiffs' claims against them. *See* FHFA Brief at 42-46; Treasury Brief at 31-37. Section 4617(b)(2)(A) provides that FHFA, as conservator, "succeed[s] to . . . all rights, titles, powers, and privileges of the [GSEs], and of any stockholder, officer, or director of such [GSEs] with respect to the [GSEs] and the assets of the [GSEs]." 12 U.S.C. § 4617(b)(2)(A). According to Defendants, pursuant to the succession clause, FHFA assumed all of Plaintiffs' rights as GSE shareholders when it became conservator, thereby extinguishing any rights that Plaintiffs might have to pursue their claims. FHFA Brief at 42; Treasury Brief at 31. Plaintiffs argue that § 4617(b)(2)(A) includes an exception that permits shareholders to bring claims alleging that "FHFA has a manifest conflict of interest that prevents it from adequately safeguarding shareholders' rights." Response at 86.[3]

As a general matter, under § 4617(b)(2)(A), FHFA assumes shareholders' rights to pursue derivative claims. *See Perry Capital II*, 2017 WL 677598, at *23 ("Rights 'with respect to' a Company and its assets are only those an investor asserts derivatively on the Company's behalf." (citing *Levin v. Miller*, 763 F.3d 667, 672 (7th Cir. 2014))). There is an apparent circuit split as to whether a statutory succession clause like § 4617(b)(2)(A) carries with it an implicit conflict-of-interest exception. *Compare id.*, at *24 (observing that a conflict-of-interest exception is unsupported by the statutory text of HERA and holding that shareholders are barred from bringing derivative suits during conservatorship "even where the FHFA will not bring a derivative suit due to a conflict of interest"), *with*

---

[3] Plaintiffs also argue that their claims are direct, rather than derivative, and that, under § 4617(b)(2)(A), FHFA does not assume shareholders' rights to pursue direct claims. *See* Response at 74-86. However, because the court has found that Plaintiffs' claims are derivative, as noted above, the court need not determine what impact § 4617(b)(2)(A) might have on shareholders' rights to pursue direct claims.

*Delta Savings Bank v. United States*, 265 F.3d 1017, 1024 (9th Cir. 2001) (reading "a common-sense, conflict of interest exception" into FIRREA's succession clause), *and First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1205 (Fed. Cir. 1999) (looking to the underlying "object of the derivative suit mechanism" to find a conflict-of-interest exception to FIRREA's succession clause).

"The Supreme Court has stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Owner-Operator Ind. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (alteration and internal quotation marks omitted) (quoting *United States v. I.L.*, 617 F.3d 817, 820 (8th Cir. 2010)). Consistent with this principle, "[i]f the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then . . . neither the courts nor the legislature have the right to add to it or take from it." *I.L.*, 614 F.3d at 821 (quoting *Lake Cty. v. Rollins*, 130 U.S. 662, 670-71 (1889)). "[B]y its unambiguous text, [§ 4617(b)(2)(A)] removes the power to bring derivative suits from shareholders and gives it to FHFA." *Perry Capital I*, 70 F. Supp. 3d at 231. The court finds no ambiguity in the provision's meaning and, therefore, refuses to judicially alter the provision to allow for an unstated conflict-of-interest exception. To whatever degree such exception may be "common-sense," *Delta Savings Bank*, 265 F.3d at 1024, or consistent with "the derivative suit mechanism," *First Hartford*, 194 F.3d at 1205, it is not for the court to impose such an exception when faced with an unambiguous statute. Accordingly, regardless of any purported conflict of interest, Plaintiffs have no rights under which to pursue their derivative claims against Defendants because FHFA has assumed all such rights pursuant to § 4617(b)(2)(A).[4]

---

[4] Because the court finds that Plaintiffs' claims are properly dismissed pursuant to § 4617(f) and § 4617(b)(2)(A), the court declines to address Defendants' argument that Plaintiffs' claims are further subject to dismissal pursuant to § 4623(d). *See generally*
(continued…)

## VI.  CONCLUSION

In summary, the court concludes that Plaintiffs' claims against FHFA and Treasury are derivative claims brought on behalf of the GSEs and, while such claims are not barred by issue preclusion, they are barred by HERA's anti-injunction provision, § 4617(f), and by HERA's succession clause, § 4617(b)(2)(A), which strips Plaintiffs of the right to pursue derivative claims and grants it exclusively to FHFA.  In light of the foregoing, the court **ORDERS** as follows:

(1)    The FHFA Motion (docket no. 76) is **GRANTED**.

(2)    The Treasury Motion (docket no. 77) is **GRANTED**.

(3)    The Amended Complaint (docket no. 61) is **DISMISSED**.

The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 27th day of March, 2017.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[4](…continued)
FHFA Supplemental Brief.